UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JENNIFER W.[1]

    **Plaintiff,**

v.

    Case No. 3:20-cv-0314
    Magistrate Judge Norah McCann King

COMMISSIONER OF SOCIAL SECURITY,[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Jennifer W. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 11, *Defendant's Memorandum in Opposition*, ECF No. 14, *Plaintiff's Reply*, ECF No.15, and the *Certified Administrative Record*, ECF No. 9. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.  **PROCEDURAL HISTORY**

Plaintiff filed her current applications for benefits in August 2012 and March 2013, respectively, alleging that she has been disabled since January 6, 2011, due to a number of impairments. R. 331-38.[3] The applications were denied by Administrative Law Judge ("ALJ") Gregory G. Kenyon following administrative hearings, at which a medical expert and a vocational expert testified, but that decision, R. 14-29, was reversed by this Court and remanded for further proceedings. *W[.] v. Berryhill*, 3:16-cv-00324, 2017 WL 3581172 (S.D. Ohio Aug. 17, 2017); R. 1195-1213. On remand, the same ALJ held another administrative hearing on May 10, 2018, at which Plaintiff testified, as did a vocational expert. R. 1172-91. In a decision dated July 23, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from her alleged disability onset date of January 6, 2011, through the date of that decision. R. 1143-61. The Appeals Council declined review of that decision on June 1, 2020. R.1133-39. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 17. The matter is ripe for disposition.

II.  **LEGAL STANDARD**

A.  **Standard of Review**

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The

---

[3] References to pages in the Certified Administrative Record will be cited, using the pagination in the Certified Administrative Record, as "R. __."

findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other co8ntexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

B.     **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 34 years old on January 6, 2011, her alleged disability onset date. R. 1159. She met the insured status requirements of the Social Security Act through June 30, 2016. R. 1145. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: Hashimoto's thyroiditis, history of celiac disease, diabetes mellitus, obesity, history of kidney stones, history of cardiac arrhythmia, degenerative joint disease of the left shoulder, depression/bipolar disorder, and an anxiety disorder. R. 1146.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 1152.

At step four, the ALJ found that Plaintiff had the RFC to perform light work with the following additional limitations:

> (1) standing and walking for a total of four hours per day; (2) no crawling or climbing or ladders, ropes, and scaffolds; (3) occasional crouching, stooping, kneeling, and climbing or ramps and stairs; (4) frequent balancing; (5) no concentrated exposure to temperature extremes; (6) no work around hazards

> such as unprotected heights or dangerous machinery; (7) frequent use of the left upper extremity for overhead reaching; (8) no work in the food or food service industries; (9) limited to performing unskilled, simple, repetitive tasks; (10) occasional contact with co-workers and supervisors; (11) no public contact; (12) no fast-paced production work or jobs involving strict production quotas; and (13) limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next.

R. 1153. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a restaurant manager, customer service representative, or gas station manager. R. 1159.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a mail clerk, inspector/hand packager, and laundry folder—existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 1160. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from her alleged disability onset date through the date of the decision. *Id*.

Plaintiff disagrees with the ALJ's findings at step four, specifically challenging the ALJ's evaluation of the medical opinions and evidence and the ALJ's evaluation of Plaintiff's subjective complaints. She asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 11; *Plaintiff's Reply*, ECF No. 15. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Memorandum in Opposition,* ECF No. 14.

IV.    **RELEVANT EVIDENCE**

In February 2012, Mary Ann Jones, Ph.D., consultatively evaluated Plaintiff at the request of the state agency. R. 505-11. Plaintiff complained of anxiety, depression, anger and irritability, mood swings, panic symptoms, memory and concentration problems, social withdrawal, and difficulty coping with stress. R. 507. She reported that her family physician was treating her depression, R. 506. On clinical examination, Dr. Jones noted that Plaintiff was cooperative, that her stream of thought was appropriate, and that her thought association was concrete to circumstantial. *Id*. Her demeanor was resigned and dysphoric and her affect was sad. *Id.* She presented as preoccupied with her symptomatology and distracted. R. 508. She was oriented; she was able to perform simple math tasks. R. 508-09. Dr. Jones diagnosed psychological factors affecting physical condition and dysthymic disorder, R. 509, and placed Plaintiff's GAF at 51, which is suggestive of moderate symptomatology. R. 510.[4] In an assessment of Plaintiff's ability to engage in work-related functioning, Dr. Jones opined that Plaintiff "can be expected to understand and apply instructions in a work setting commensurate with" a borderline range of intelligence, that she appeared "to track the flow of conversation adequately across the interview process," although "this [was] thought to be due to" the non-stressful environment of the examination, that Plaintiff reported that she interacted with coworkers and customers in a reasonable fashion, and that she reported "no particular history of mental or emotional deterioration on the job." R. 510-11.

Later that same month, Tonnie Hoyle, Psy.D., reviewed the record and concluded that Plaintiff's affective disorders and cognitive functioning would limit her to understanding and

---

[4] A Global Assessment of Functioning, or GAF, score is a clinician's subjective rating of an individual's overall psychological functioning. *Kornecky v. Comm'r of Soc.Sec.,* 167 Fed. Appx. 496, 503 (6th Cir. 2006) (explaining that a "GAF of 51–60 indicates moderate symptoms.)

following basic 1- to 3-step work tasks, that she was not significantly limited in her ability to carry out very short and simple instructions, and that she could work in a setting that is relatively static. R. 110-11.

In October 2012, Donald Kramer, Ph.D., also consultatively examined Plaintiff at the request of the state agency. R. 534-41. On clinical examination, Plaintiff was well oriented and showed no evidence of a thought disorder. R. 536. Her affect was somewhat sad and discouraged; her social skills and ability to establish rapport were somewhat marginal. R. 536-37. She displayed no overt anxiety during the examination, but reported limited coping skills. R. 537. Insight and judgment were "somewhat marginal." R. 538. Dr. Kramer diagnosed mood disorder, nos, and anxiety disorder, nos. R. 538. He placed her GAF at 60. *Id*. According to Dr. Kramer, Plaintiff "may have some mild limitations" because of her anxiety and depression, but her ability to perform simple tasks was intact and her persistence, pace, attention and concentration were adequate. R. 539. She was moderately limited in her ability to respond appropriately to supervision and to coworkers, and in responding appropriately to work pressures in a work setting. R. 539-40.

In December 2012, Caroline Lewin, Ph.D., reviewed the record on reconsideration by the state agency and concluded that the record documented an affective disorder and anxiety-related disorder, R. 136, and opined that Plaintiff could perform simple, routine 1-3 step tasks without frequent changes, that Plaintiff's ability to sustain concentration and persistence was not significantly limited except if she were required to carry out detailed instructions or maintain attention and concentration for extended periods, and that she should have only superficial contact with coworkers and supervisors. R. 137-39.

In October 2012, Amita Oza, M.D., performed a consultative physical examination of Plaintiff at the request of the state agency. R. 526-33. According to Dr. Oza, Plaintiff's hypothyroid symptoms had worsened "because of lack of absorption due to her celiac disease. She also is depressed, which may be partly related to her hypothyroidism. Her medical conditions need to be treated and then she should be able to work." R. 528.

In March 2013, Plaintiff began individual therapy sessions with Margaret Barker, LSW, at Day-Mont Behavioral Healthcare following a hospitalization for threatening an overdose. On initial examination, Plaintiff had no delusions and her thought process was logical; her mood was average and her affect was full. R. 603-04. Plaintiff was diagnosed with bipolar I disorder and severe depression with psychotic features. R. 605. Her GAF was rated 55. R. 606. In June 2013, Ms. Barker reported:

> [Plaintiff] has some mental health symptoms that interfere with her being able to function adequately on any given day. She is working on healthy coping skills and is doing well in her therapy. At this time she could not safely work or deal with the public.

R. 645. Ms. Barker continued her sessions with Plaintiff approximately every 4-6 weeks through October 2014. R. 1017-75.

Peter Ramirez, M.D., a psychiatrist at Day-Mont, has also treated Plaintiff. In April 2013, Dr. Ramirez noted findings of euthymic mood and full affect, logical thought process, and intact insight and judgment. R. 626-27. Plaintiff's GAF score was rated 55. R. 628. Dr. Ramirez prescribed medication. R. 628. At her next office visit, in May 2013, Plaintiff's mood was depressed and her affect was constricted. R. 633. Plaintiff's medications caused no side effects. R. 633. In June 2013, Plaintiff's mood was euthymic and her affect was constricted. R. 640. Because her medication caused nausea/heartburn, it was adjusted. R. 641. In September 2013, Dr. Ramirez completed a mental status questionnaire in which he described Plaintiff's mood and

affect as depressed and blunted, and she demonstrated mild anxiety symptoms. R. 647. She was oriented and her memory was intact, although she had concentration difficulties. *Id.* He diagnosed "Bipolar Disorder, depressed with Psychotic Features; indefinite impairment; Anxiety Disorder," to which Plaintiff had had partial response. R. 648. According to Dr. Ramirez, Plaintiff's ability to remember, understand and follow directions was fair, her ability to sustain "long-term attention" was poor, as was her ability to sustain concentration, persist at tasks, and complete them in a timely fashion, due to "impaired stress tolerance." *Id*. According to Dr. Ramirez, Plaintiff had "[p]oor stress tolerance. Normal job stresses result in exacerbation of mood instability." *Id.* Dr. Ramirez also opined that Plaintiff would have "unreliable attendance due to anxiety & mood instability." R. 650. At Plaintiff's June 2014 and October 2014 office visits, Dr. Ramirez noted a normal or euthymic mood and full affect, organized and logical thought process, intact attention/concentration, normal recent and remote memory. R. 1030, 1023-24. Her medication had no side effects. R. 1031, 1025. Her GAF remained 55. R. 1034, 1028. In February 2015, Plaintiff's mood was depressed, R. 1093, although Dr. Ramirez' other findings, including his GAF rating of 55, remained the same. R. 1094, 1098. At her June 2015 office visit, Plaintiff's mood was once again euthymic. R. 1118.

In February 2016, a treating provider completed a basic medical form for the Ohio Department of Job & Family Services. R. 1362-64.[5] Plaintiff was a new patient to the practice, but her diagnoses were listed as neuropathy, diabetes, fatigue, sacral back pain, hypothyroidism, mood disorder, and chronic kidney stones. R. 1362. Her condition was characterized both as "Poor But Stable" and "Deteriorating." *Id*. The provider also stated that Plaintiff's "Blood Sugars

---

[5] The signature on the form is largely illegible. However, Plaintiff represents that the form was signed by Plaintiff's treating nurse practitioner. *Plaintiff's Statement of Errors*, ECF No. 11, PageID# 1824.

are up and dwn," and "We are attempting to get her into endocrinology to get her Blood Sugars more stable." *Id*. In May 2016, Plaintiff was in fact seen by an endocrinologist, R. 1670-77, whose notes include the statement, "Fluctuating doses [of medication for hypothyroidism] over the years, difficult to achieve stable levels." R. 1670.[6]

Charles Metcalf, M.D., a Board-certified internist, testified at one of the earlier administrative hearings that the record documented a tendency to develop supraventricular tachycardia, for which treatment had been effective; diabetes without complications; mild celiac disorder; problems with kidney stones that result in no physical limitations; obesity; and a thyroid condition, although "most of the time her TSH tests, which are the gold standard test, were within normal limits." R. 39-41. According to Dr. Metcalf, Plaintiff could perform light work with additional postural and environmental limitations. R. 42.

Plaintiff testified that her depression makes it difficult to focus. R. 1177. She spends the entire day in bed up to four times per week. R. 1178. She has difficulty concentrating on TV shows and completing household tasks. *Id.* She has crying spells up to ten times per day and panic attacks five or six times per week. R. 1179. She has no friends and avoids leaving her home, R. 1180, and Dr. Ramirez suggested that she not go out in public alone, R. 1184. Plaintiff also testified that her thyroiditis causes fatigue. R. 1181. She naps twice a day. *Id.* Some of her medications have been effective, but her doctors have changed her medications over the years. R. 1183.

## V. DISCUSSION

Plaintiff argues that the ALJ erred in his evaluation of the opinions of Dr. Ramirez, Plaintiff's treating psychiatrist, as well as the medical evidence generally. Under the regulations

---

[6] The source of this statement is not entirely clear from the record.

applicable to claims, like Plaintiff's, filed before March 27, 2017, the opinion of a treating provider must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), (4), 416.927(c)(2), (4). The Commissioner must provide "good reasons" for discounting the opinion of a treating provider, and those reasons must both enjoy support in the evidence of record and be sufficiently specific to make clear the weight given to the opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec*, 710 F.3d 365, 376 (6th Cir. 2013); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)(citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).

If the treating source opinion is not accorded controlling weight, the ALJ must then consider the following factors in deciding the weight to be given to any medical opinion, including that of the treating source: the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, the specialization of the source rendering the opinion, and other factors that "tend to support or contradict the medical opinion." 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). However, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits a claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Moreover, nurse practitioners and therapists are not included in the category of acceptable medical sources. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (2016). However, opinions from those who are not acceptable medical sources "may reflect the source's judgment

12

about some of the same issues addressed in medical opinions from acceptable medical sources." 20 C.F.R. §§ 404.1527(f)(1), 416. 927(f)(1). When considering opinions from non-acceptable medical sources, an ALJ may refer to the factors to be considered in evaluating the opinions of acceptable medical sources, *see* 20 C.F.R. §§ 404.1527(c), 416. 927(c), but need not refer to every such factor. 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1).

In his most recent decision, the ALJ expressly acknowledged the appropriate standard, R. 1150, 1156, and summarized the evidence relating to Plaintiff's impairments, as well as the opinions of Dr. Ramirez and Ms. Barker. R. 1147-50. He accorded "partial weight" to Dr. Ramirez' opinion:

> …[T]he opinion of treating psychiatrist Dr. Ramirez that the claimant is unable to tolerate normal job stress, and would have unreliable attendance due to anxiety and mood instability cannot be given controlling weight and is, in fact, given partial weight. . . . The District Court's main focus in its remand order was the weight given to this opinion of Dr. Ramirez, and in particular his sentence noting that The undersigned must note that this assessment is not consistent with the treatment notes of Dr. Ramirez and the therapists at Day-Mont. Upon intake at Day-Mont, the claimant was noted to be of an "average" mood, with a "full" affect. She was assessed with a GAF score of "55," which is indicative of "moderate symptoms." During her entire period of treatment at Day-Mont, the claimant was assessed with a GAF score of "55." These GAF scores are also consistent with those assessed by Dr. Kramer, "60," and Dr. Jones, "51." Though the GAF scores assessed by Dr. Kramer and Dr. Jones are higher and lower respectively than those of Dr. Ramirez, again, all of them are indicative of "moderate" symptoms. The only outlying score is that assessed by Miami Valley Hospital, "45," which was upon admittance and prior to any mental health treatment. Upon discharge to outpatient care at Day-Mont, the claimant's GAF score was "60," again indicative of "moderate" symptoms. After the claimant's first several visits, only once was her mood noted as "depressed" (her affect was still "full"). This was during the February 18, 2015 visit, and coincided with physical issues related to her diabetes. Otherwise, the claimant's mood was "stable," "normal," or "euthymic" and her anxiety "under control" and affect "full." In short, at worst, the notes at Day-Mont reflect "moderate" symptoms. Largely, they reflect a "stable" and "normal" mood under treatment, and not "mood instability" that would indicate "unreliable attendance." This one sentence in Dr. Ramirez's opinion is not enough to overturn the consistent treatment notes that contradict it. Social Security relations dictate, "Particular attention is to be given to the consistency of the opinion with other evidence, the qualifications of

13

> the source, and the degree to which the source offers supporting explanations for the opinion." Here, Dr. Ramirez's opinion is not consistent with his own treatment notes, and thus, the undersigned assigns it only partial weight.

R. 1150-51 (citations to record omitted). The ALJ accorded "little weight" to Ms. Barker's opinion:

> As to the opinion of Ms. Barker, the undersigned assigns it little weight for several reasons. First, social workers are not included among the acceptable sources of medical evidence defined in the regulations. Therefore information provided by social workers does not equal in probative value reports from those medical sources shown as being acceptable such as licensed psychologists. The findings of such acceptable medical sources in this case do not document the existence of a mental impairment which would prevent the claimant from "safely work[ing] or deal[ing] with the public." As noted above, during her entire period of treatment at Day-Mont, the claimant was assessed with a GAF score of "55." Further, after the claimant's first several visits, only once was her mood noted as "depressed" (her affect was still "full"). This was during the February 18, 2015 visit, and coincided with physical issues related to her diabetes. Otherwise, the claimant's mood was "stable," "normal," or "euthymic" and her anxiety "under control" and affect "full." Secondly, the ultimate conclusion as to whether an individual satisfies the statutory definition of "disability" is an issue that is reserved to the Commissioner of Social Security. What Ms. Barker meant by "could not safely work," (i.e. is "disabled") is not clear nor is such a generic statement consistent with the specific and precise definition of "disability" for Social Security purposes. Whether any documented reduction in capability renders an individual "disabled" (i.e., ultimately, whether the individual is unable to perform work existing in significant numbers in the national economy is an issue to be resolved under Social Security rules and regulations. Hence, the conclusion of Ms. Barker that the claimant is rendered unable to "safely work" is given no weight.

R. 1151 (citations to record omitted).

Plaintiff first complains that the ALJ erred in according "partial weight" to Dr. Ramirez' opinion "without specifying which 'part' of this opinion was given weight." *Plaintiff's Statement of Errors*, ECF No. 11, PageID# 1820. This Court disagrees. A fair reading of the ALJ's opinion makes clear that the ALJ rejected those portions of Dr. Ramirez' opinion that "the claimant would have 'unreliable attendance due to anxiety and mood instability.'" R. 1150. The ALJ also made clear the evidentiary basis for that assessment, including the fact that Plaintiff's treatment

14

records at Day-Mont did not support the doctor's opinion in that regard. The ALJ's findings are supported by substantial evidence.

Plaintiff next argues that the ALJ erred by relying heavily on GAF scores in rejecting the opinions of Dr. Ramirez and Ms. Barker, Plaintiff's treating mental health professionals. *Plaintiff's Statement of Errors*, ECF No. 11, PageID# 1821. Again, this Court disagrees. It is true that GAF scores "have no 'direct correlation to the severity requirements of the mental disorders listings.'" *DeBoard v. Comm'r of Soc. Sec.,* 211 Fed. Appx. 411 (6th Cir. 2006) (*quoting Wind v. Barnhart,* 133 Fed. Appx. 684,691-92 n. 5 (11th Cir. 2005) (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)). However, a GAF score is nevertheless a medical opinion, and "it should be considered by the ALJ in conjunction with all of the other relevant record evidence when assessing disability claims involving mental disorders." *Cunningham v. Comm'r of Soc. Sec.*, 3:19-cv-00314, 2020 WL 3229289, at *5 (E.D. Tenn. June 15, 2020) (citing Social Security Administration Administrative Message 13066).  Moreover, the United States Court of Appeals for the Sixth Circuit has held that a GAF score, although not determinative, "may be of considerable help to the ALJ in formulating the RFC." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 835 (6th Cir. 2016) (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). The ALJ did not err in considering the GAF scores reflected in the record, nearly all of which indicated that Plaintiff's mental impairments result in no more than moderate symptoms.

In considering the opinions relating to Plaintiff's physical impairments, the ALJ assigned "substantial weight" to the opinion of Dr. Oza, one of the consultative examiners:

> Amita Oza, M.D., a non-treating physician, examined the claimant at the behest of the DDD in order to assess [her] physical functional capacity. Dr. Oza was of the opinion that the claimant suffered from a history of hypothyroidism, and Celiac disease. Dr. Oza performed a physical examination of the claimant including testing. The claimant indicated that her Synthroid dosing needed adjustment, and that her cardiac arrhythmias were controlled by metoprolol. . . .

15

> Dr. Oza concluded that the claimant's hypothyroidism was complicated by Celiac disease, but that the claimant was physically able to work with appropriate treatment. The undersigned assigns substantial weight to this opinion. Dr. Oza performed a full examination, and the results were unremarkable. The claimant exhibited a near full range of motion, with only minimal limitation in the lumbar spine due to her size. The evidence of record, which reflects that the claimant's physical condition is well controlled, supports this examination.

R. 1154 (citations to record omitted).

The ALJ also considered the testimony and opinion expressed by Dr. Metcalf, the medical expert who testified at one of the earlier administrative hearings:

> Charles Metcalf, M.D., a board certified internist, reviewed the record and testified at the initial hearing, as a medical expert. Dr. Metcalf described the claimant's problems as controlled atrial tachycardia, controlled diabetes, mild Celiac disorder, kidney stones, but no physical limitations related to it, obesity, and a thyroid condition, but no physical limitations from it. Dr. Metcalf testified that the claimant has no significant medical condition that affects her residual functional capacity. . . . The undersigned assigns partial weight to this opinion. Dr. Metcalf's testimony was well supported by the existing medical record (SSR 96-6p). However, his testimony was limited to the record at the time. . . . The claimant now has a new impairment of DJD of the left shoulder, so his opinion is now entitled to less weight, even though his ultimate conclusion that the claimant remains capable of light exertion remains valid.

R. 1154-55 (citations to record omitted).

Plaintiff complains that the ALJ applied "significantly more rigorous scrutiny to the treating opinions than the non-treating opinions," with particular reference to the testimony of Dr. Metcalf. *Plaintiff's Statement of Errors*, ECF No. 11, PageID# 1822. To the contrary, the ALJ reduced his reliance on Dr. Metcalf's opinion and articulated his reason for doing so: it was based on the medical record as it existed at the time of the earlier administrative hearing, and without the benefit of medical evidence entered into the record after that hearing. Included in that additional evidence were records of low TSH levels, *see, e.g.,* R. 1735, and the statement in the record, R. 1670, that "stable levels" in the treatment of Plaintiff's hypothyroidism had been "difficult to achieve." Moreover, it is important to note that Dr. Metcalf offered an opinion only

16

as to Plaintiff's physical RFC, which the ALJ in any event reduced from that opined by Dr. Metcalf and which Plaintiff does not challenge.

Finally, Plaintiff argues that the ALJ failed to properly evaluate her subjective complaints, particularly her complaint that her "myriad of medications caused substantial side effects, including severe fatigue." *Plaintiff's Statement of Errors*, ECF No. 11, PageID# 1825. Subjective allegations of pain or other symptoms, unsupported by objective medical evidence, cannot alone establish a disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). In evaluating a claimant's subjective complaints, an ALJ must follow a two-step process. SSR 16-3p, 2016 WL 1119029 (March 16, 2016).[7] First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.* In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. §§ 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or

---

[7] SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. SSR 16-3p clarifies that the ALJ should not make statements about an individual's truthfulness but should determine whether the claimant's subjective complaints are consistent with other evidence in the record.

other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms), 416.929(c)(3) (same). Finally, although an ALJ's evaluation in this regard must be supported by substantial evidence, the ALJ has wide discretion to weigh the claimant's subjective complaints and may discount those complaints where they are not supported by other relevant objective evidence. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)).

In the case presently before the Court, the ALJ acknowledged the governing standard for evaluating a claimant's subjective complaints, R. 1157-58, but found that "[t]here is no evidence of adverse side effects from treatment or medication that would prevent the claimant from performing competitive work activity at the 'light' level of exertion on a regular and continuing basis." R. 1158-59. Indeed, no doctor or medical professional has ever pointed to side effects of Plaintiff's medication as a basis for disability. Significantly, Plaintiff's treatment records from Day-Mont repeatedly reflect the notation that Plaintiff's medications caused no side effects. *See, e.g.*, R. 633, 1025, 1031. Considering the wide discretion enjoyed by an ALJ in evaluating a claimant's subjective complaints, the Court will not disturb the ALJ's determination in this case.

## VI. CONCLUSION

For all these reasons, the Court **DENIES** *Plaintiff's Statement of Errors*, ECF No. 11, and **AFFIRMS** the Commissioner's decision.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date: October 14, 2022            *s/Norah McCann King*
                        NORAH McCANN KING
                        UNITED STATES MAGISTRATE JUDGE